Slip Op. 20-102

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JIAXING BROTHER FASTENER CO., LTD. ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> VULCAN THREADED PRODUCTS INC., <br><br> Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Court No. 14-00316 <br> PUBLIC VERSION |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's remand redetermination in the fourth administrative review of the antidumping duty order on certain steel threaded rod from the People's Republic of China.]

Dated: July 22, 2020

Gregory S. Menegaz and Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, D.C., for plaintiffs Jiaxing Brother Standard Parts Co., Ltd., IFI & Morgan Ltd., and RMB Fasteners Ltd.

Joseph H. Hunt, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Elizabeth A. Speck, Senior Trial Counsel. Of Counsel was W. Mitchell Purdy, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Court No. 14-00316                                                                                                    Page 2
**PUBLIC VERSION**

Roger B. Schagrin and Paul W. Jameson, Schagrin Associates, of Washington, D.C., for defendant-intervenor Vulcan Threaded Products Inc.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Department" or "Commerce") remand redetermination filed pursuant to the court's order in Jiaxing Brother Fastener Co. v. United States, 44 CIT __, 425 F. Supp. 3d 1338 (2020) ("Jiaxing II"). See also Final Results of Redetermination Pursuant to Court Remand Order in [Jiaxing II], Apr. 17, 2020, ECF No. 119 ("Second Remand Results"). In Jiaxing II, the court sustained in part and remanded in part Commerce's final determination in the fourth administrative review of the antidumping duty ("ADD") order on certain steel threaded rod ("STR") from the People's Republic of China ("PRC"). See [STR] from the [PRC], 79 Fed. Reg. 71,743 (Dep't Commerce Dec. 3, 2014) (final results of [ADD] admin. review; 2012-2013) ("Final Results"), and accompanying Issues & Decision Memo. for the Final Results of the Fourth Admin. Review of the [ADD] Order on [STR] from the [PRC], A-570-932, (Nov. 21, 2014), ECF No. 23-2 ("Final Decision Memo."); Certain [STR] from the [PRC], 74 Fed. Reg. 17,154 (Dep't Commerce Apr. 14, 2009) (notice of [ADD] order).

In Jiaxing II, the court remanded for further explanation or reconsideration Commerce's decision to apply a 10,000 kilogram weight assigned to shipping containers in the calculation of brokerage and handling ("B&H") costs. Id., 44 CIT at __, 425 F. Supp. 3d at 1351–52. On remand, Commerce continues to assign a 10,000 kilogram weight to shipping containers in its B&H cost surrogate value calculation.

See Second Remand Results at 1, 5–16. Plaintiffs Jiaxing Brother Fastener Co., Ltd., a/k/a Jiaxing Brother Standard Parts Co., Ltd., IFI & Morgan Ltd., and RMB Fasteners Ltd. (collectively, "Jiaxing") challenge Commerce's remand redetermination as unsupported by substantial evidence. See [Pls.'] Cmts. Opp'n Second Remand Results at 1–5, May 18, 2020, ECF No. 122 ("Pls.' Br."). Defendant and Defendant-Intervenor Vulcan Threaded Products Inc. ("Vulcan") request the court to uphold the Second Remand Results. See Def.'s Resp. Cmts. Remand Redetermination at 1–2, 5–11, June 17, 2020, ECF No. 125 ("Def.'s Br."); Def.-Intervenor's Cmts. Supp. Second Remand Results at 1–4, May 21, 2020, ECF No. 124 ("Def.-Intervenor's Br."). For the following reasons, the court sustains Commerce's surrogate value calculation of B&H costs.

## BACKGROUND

The court assumes familiarity with the facts of this case, as set out in the two previous opinions ordering remand, see Jiaxing Brother Fastener Co. v. United States, 43 CIT __, 380 F. Supp. 3d 1343, 1349–50 (2019) ("Jiaxing I"); Jiaxing II, 44 CIT at __, 425 F. Supp. 3d at 1342–44, and recounts those facts relevant to the court's review of the Second Remand Results. In this fourth administrative review of the ADD order on STR,[1] Commerce selected Thailand as the primary surrogate country,

---

[1] The fourth administrative review covers the period April 1, 2012 through March 31, 2013. See Initiation of Antidumping and Countervailing Duty Admin. Reviews and Request for Revocation in Part, 78 Fed. Reg. 33,052, 33,056 (Dep't Commerce June 3, 2013).

Court No. 14-00316                                                                                                   Page 4
**PUBLIC VERSION**

see Final Decision Memo. at 14, and used the World Bank's "Doing Business 2014: Thailand" report ("Doing Business report")[2] to calculate a surrogate value for Jiaxing's B&H costs. Id. at 22-26. Relevant here, Commerce generated B&H costs on a per-kilogram basis by assigning each shipping container of Jiaxing's STR a weight of 10,000 kilograms. Id. at 27–28.

In Jiaxing I, the court ordered Commerce to reconsider or further explain its decision to calculate B&H with an assumption that each 20-foot shipping container weighs 10,000 kilograms. See id., 44 CIT at __, 380 F. Supp. 3d at 1367–68. The court noted that the Doing Business report provided B&H costs on a "per container" basis yet did not expressly state that the B&H costs are dependent on a specific 20-foot shipping container weight. Id., 44 CIT at __, 380 F. Supp. 3d at 1366–67. The court determined that Commerce failed to consider record evidence that indicated

---

[2] The "Doing Business 2014: Thailand" report is one of a series of annual reports prepared by the World Bank for various countries which "measures and tracks changes in regulations affecting 11 areas in the life cycle of a business" to show "how easy or difficult it is for a local entrepreneur to open and run a small to medium-size business when complying with relevant regulations." Surrogate Values for the Prelim. Results at Ex. 15 at 4, PD 104–05, bar codes 3202737-01–02 (May 16, 2014) ("Prelim. SV Memo"). The relevant "Trading Across Borders" section employed by Commerce to prepare Jiaxing's surrogate B&H costs measures the "cost (excluding tariffs and the time and cost for sea transport) associated with exporting and importing a standard shipment of goods by sea transport." Id. at Ex. 15 at 72. For exports, such costs include (1) customs clearance and technical control, (2) ports and terminal handling, (3) inland transportation and handling, (4) bills of lading, (5) certificates of origin, (6) commercial invoices, (7) customs export declaration, and (8) terminal handling receipts. Id. at Ex. 15 at 78–79. These costs are derived from questionnaires concerning a standardized case scenario and refer to business in Thailand's largest business city. Id. at Ex. 15 at 102–03.

Court No. 14-00316                                                                                           Page 5
**PUBLIC VERSION**

that B&H costs—such as costs of document preparation, customs clearance and technical control, and ports and terminal handling—are not affected by the weight of a particular shipping container. See id. On remand, Commerce continued to use a 10,000-kilogram denominator in the calculation of the B&H surrogate value, because surveyed respondents of the Doing Business report were asked to provide B&H costs based upon a 20-foot shipping container weighing 10,000 kilograms. See Final Results of Redetermination Pursuant to Court Remand [Jiaxing I] at 5–7, Aug. 27, 2019, ECF No. 105 ("First Remand Results").

In Jiaxing II, the court again ordered Commerce to reconsider or further explain its decision to apply a 10,000-kilogram denominator in its calculation of B&H costs, because Commerce failed to elaborate why a 10,000-kilogram container weight relates to B&H costs, when those costs were specifically catalogued "per container" in the Doing Business report, i.e., based on the broader assumption that the goods are "transported in a dry-cargo, 20-foot full container load." See id., 44 CIT at __, 425 F. Supp. 3d at 1349 (citing Surrogate Values for the Prelim. Results at at Ex. 15 at 72, 78, PD 104–05, bar codes 3202737-01–02 (May 16, 2014) ("Prelim. SV Memo")).[3] In

---

[3] On January 26, 2015, Defendant filed on the docket the indices to the public and confidential administrative records at ECF Nos. 23-4–5. Subsequently, on August 29, 2019, Defendant filed indices to the public and confidential record underlying Commerce's first remand redetermination at ECF Nos. 106-2–3. On May 1, 2020, Defendant filed indices to the public and confidential record underlying Commerce's second remand redetermination at ECF Nos. 121-1–2. All further references to documents from the administrative records are identified by the numbers assigned by Commerce in these indices.

addition, the court noted that Commerce did not address detracting evidence that indicate B&H fees are established by container size and load, rather than by weight. See id., 44 CIT at __, 425 F. Supp. 3d at 1349–51. On second remand, Commerce offers further explanation as to why, based on review of the record evidence, it relies on a 10,000-kilogram denominator to calculate the surrogate value for B&H costs. See Second Remand Results at 1, 4–16.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii), and 28 U.S.C. § 1581(c) (2012),[4] which grant the court authority to review actions contesting the final determination in a review of an antidumping duty order. The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## DISCUSSION

Jiaxing challenges as unsupported by substantial evidence Commerce's continued reliance on a 10,000-kilogram denominator in the surrogate value calculation of B&H costs, because the figure is not grounded in commercial reality and does not relate to Jiaxing's experience. See Pls.' Br. at 1–5. Further, Jiaxing argues that Commerce has not addressed record evidence indicating that alternative container weights of 16,000 or 28,200 kilograms are the best available information to use as the denominator in the valuation of B&H costs. Id. Defendant and Vulcan disagree and request the court to sustain the Second Remand Results. See Def.'s Br. at 1–2, 5–11; Def.-Intervenor's Br. at 1–4. Specifically, Defendant contends that Commerce reconsidered record evidence and reasonably determined that a denominator of 10,000 kilograms is generally supported by the record, unlike the proposed alternative weights. See Def.'s Br. at 5–11. Defendant-Intervenor argues that, as a matter of law, Jiaxing's own commercial experience does not factor into Commerce's surrogate value selection. See Def.-Intervenor's Br. at 1–4. For the reasons that follow, Commerce's reliance on a 10,000-kilogram container weight to calculate B&H costs is reasonable on this record.

In an antidumping proceeding, if Commerce considers an exporting country to be a non-market economy ("NME"), like the PRC, it will identify one or more market economy countries to serve as a "surrogate" for that NME country in the calculation of normal value. See 19 U.S.C. § 1677b(c)(1), (4). Normal value is determined on the

Court No. 14-00316                                                                                                    Page 8
**PUBLIC VERSION**

basis of factors of production ("FOPs") from the surrogate country or countries used to produce subject merchandise. See id. at § 1677b(c)(1). FOPs to be valued in the surrogate market economy include "hours of labor required," "quantities of raw materials employed," "amounts of energy and other utilities consumed," and "representative capital cost, including depreciation." Id. at § 1677b(c)(3). This analysis is designed to determine a producer's costs of production in an NME as if that producer operated in a hypothetical market economy. See, e.g., Downhole Pipe & Equipment, L.P. v. United States, 776 F.3d 1369, 1375 (Fed. Cir. 2015); Nation Ford Chemical Co. v. United States, 166 F.3d 1373, 1375 (Fed. Cir. 1999); see also 19 U.S.C. § 1677b(c)(1).

In calculating normal value, Commerce also subtracts "costs, charges, and expenses incident to bringing the foreign like product from the original place of shipment to the place of delivery to the purchaser." 19 U.S.C. § 1677b(a)(6)(B)(ii). Among the deductions are amounts that represent the costs for B&H export costs and cost of freight. The subtraction of these B&H costs from a respondent's normal value is intended to allow a fair comparison to net (or ex-factory) prices, which are not affected by the extra costs experienced by an exporter in shipping products around the world. For the Final Results, Commerce generated a surrogate B&H cost per kilogram for each shipping container of STR shipped by Jiaxing to the United States based on costs associated with exporting a 20-foot, 10,000-kilogram shipping container in the Doing Business report. See Final Decision Memo. at 27–28; see also

Court No. 14-00316 Page 9
**PUBLIC VERSION**

Prelim. SV Memo. at Ex. 12.  First, Commerce added the costs reported "per container" for document preparation ($175), customs clearance and technical control ($50), and ports and terminal handling ($160), totaling $385 as the numerator in its calculation.  See Prelim. SV Memo at Ex. 12, Ex. 15 at 72, 78; see also Final Decision Memo at 27–28.  Commerce then selected 10,000 kilograms to represent container weight for the denominator from a stated assumption in the Doing Business report's methodology by which surveyed respondents provided costs, i.e., that "[t]he traded product travels in a dry-cargo, 20-foot, full container load . . . [and] weighs 10 tons and is valued at $20,000."[5]  See Final Decision Memo. at 27; see also Ex. A Trading Across Borders Methodology, Feb. 26, 2019, ECF No. 92-1.  Commerce divided the "costs per container" by 10,000 kilograms, resulting in a $0.0385 per kilogram value, see Prelim. SV Memo. at Ex. 12, that Commerce applies to make a fair value comparison based on Jiaxing's sales and cost databases, which were reported on the basis of kilograms.  See Second Remand Results at 5–6.

On second remand, Commerce offers further explanation and reasonably applies a 10,000-kilogram denominator to calculate B&H costs, in light of its reexamination of record evidence indicating that the value represents the best available information.  Commerce explains that Jiaxing reported its B&H costs on the basis of kilograms and did not propose a different unit of analysis or alternate

---

[5] Ten tons is approximately 10,000 kilograms.

means to allocate costs.6  See Second Remand Results at 5–6, 6 n.25 (noting that Jiaxing acknowledges Commerce requires a per kilogram cost to calculate B&H costs); see also Letter from DeKieffer & Horgan to Sec of Commerce Pertaining to Brother Cmts on Draft Remand Determination at 5, RPD 5, bar code 3876875-01 (Aug. 9, 2019) ("Plaintiffs understand that the Department needs a per kg cost for B&H due to the nature of its antidumping margin calculation."). Therefore, as Commerce notes, its calculation of B&H costs must be denominated by weight. Second Remand Results at 6. However, unlike the proposed alternative weights of 16,000 kilograms and 28,200 kilograms, Commerce explains that the use of a 10,000-kilogram denominator is generally supported by the record.7 Id. at 6–8.

Although Jiaxing proposes 16,000 kilograms as reflective of its own commercial experience, Commerce reasonably rejects that figure because Commerce, in

---

6 Commerce does not address whether the Doing Business report may be read as reporting B&H costs on a per container basis rather than by container weight. Cf. Jiaxing II, 44 CIT at __, 425 F. Supp. 3d at 1350–51. Nonetheless, given the record and that weight was the only metric by which Commerce could calculate the B&H SV, Commerce reasonably evaluates each alternative weight and concludes that the 10,000 kilogram figure reported in the Doing Business report is the best information on the record to use as the denominator in its calculation of B&H costs.

7 Jiaxing suggests that "a large and growing body of case law reversing the Department's approach" of using a 10,000-kilogram denominator. Pls.' Br. at 5. Although the Court of Appeals recently reversed Commerce's use of a 10,000-kilogram denominator to calculate B&H costs in SeAH Steel VINA Corp. v. United States, 950 F.3d 833 (Fed. Cir. 2020), the plaintiffs in that case, unlike Jiaxing here, challenged Commerce's methodology to use a weight-based denominator. Compare id. at 845–46 with Second Remand Results at 6 n.25. The Court of Appeals held that Commerce had not supported its methodology selection with substantial evidence. SeAH Steel VINA Corp., 950 F.3d at 846.

Court No. 14-00316                                                                                           Page 11
**PUBLIC VERSION**

determining SVs, has no obligation to exactly replicate Jiaxing's shipping experience and, further, Commerce identifies flaws related to the derivation of the weight. Id. at 5–16. As Commerce observes, the Court of Appeals has held that Commerce is not required to duplicate an NME producer's exact experience in determining SVs. See id. at 5 (citing Nation Ford, 166 F.3d at 1373); see also id. at 8. Nonetheless, Commerce evaluates Jiaxing's proposed value of 16,000 kilograms yet finds that it does not appear to reflect the overall experience of Jiaxing. Id. at 7–8. Specifically, Jiaxing proposed the 16,000-kilogram figure based on the weight of sample shipments associated with three of 127 invoices on the record. See id. at 7 (citing Resp. from DeKeiffer & Horgan to Sec of Commerce Pertaining to [Jiaxing] Supp A Q/R, Pt. 1 at Ex. SA-9, CD 28, bar code 3184546-01 (Feb. 27, 2014); Data from DeKeiffer & Horgan to Sec of Commerce Pertaining to [Jiaxing] Ex. SC-6, CD 44, bar code 3190495-01 (Mar. 25, 2015)). Commerce notes that the three invoices do not average 16,000 kilograms but rather a slightly lower weight and, in addition, finds that Jiaxing's representation of this figure as the company's "average container weight" to be misleading. Id. at 11–14.[8] Commerce explains that, in reviewing all 127 invoices,

---

[8] Jiaxing avers that the remaining invoices should not be included in the calculation of average container weight, because the other invoices reflect amounts for less than full container load. See Pls.' Br. at 1–2. However, as Commerce observes, Jiaxing does not substantiate its claim that shipments are consolidated such that shipments at less than container load are not reasonably reflective of Jiaxing's shipping. See Second Remand Results at 12–13.

Jiaxing's average invoice weight[9] was a value similar to the 10,000-kilogram figure from the Doing Business report. Id. at 8 (citing Memo From USDOC to File Pertaining to [Jiaxing] STR Remand Weight Analysis Memo at Attach. I, RCD 2–3, bar codes 3955340-01–02 (Mar. 18, 2020)). Commerce also observes that even though Jiaxing presented a B&H figure from a Thai exporter, Pakfood Company Limited, of 12,365 kilograms as an entity with a "similar" shipping experience to Jiaxing, that shipping weight is closer to the 10,000-kilogram figure than its proposed 16,000-kilogram weight. Id. at 15 n.45 (citing Brief from Vorys, Sater, Seymour and Pease LLP to Sec of Commerce Pertaining to Petitioner Case Brief at 38–39, PD 120, bar code 3219780-01 (Aug. 4, 2014)). Thus, Commerce reasonably determines that the 16,000-kilogram weight is neither supported by record evidence nor reasonably reflective of the shipping experience in the NME country. Cf. Nation Ford, 166 F.3d at 1373.

Likewise, Commerce rejects Jiaxing's proposal that Commerce adopt a maximum shipping container weight of 28,200 kilograms as unsupported by record evidence. Id. at 8. Jiaxing, as Commerce explains, does not substantiate the figure with record evidence or explanation. Id. Therefore, given the deficiencies in the

---

[9] Commerce calculates Jiaxing's average invoice rate to be [[     ]] kilograms. See Second Remand Results at 8. In doing so, Commerce acknowledges that one invoice may not correspond to one shipment, and that there may be invoices that reflect shipment in one container or that are split across multiple containers. See id. at 13–14. The resultant average, according to Commerce, is a "proxy" for Jiaxing's shipping experience, given the data on the record. Id. at 14.

proposed alternatives and that Jiaxing failed to propose a different approach to calculate B&H costs than by weight, Commerce, on review of the record evidence, reasonably concludes that 10,000 kilograms is the best available information on the record to use in the denominator of its B&H cost calculation. Id. at 15–16.

## CONCLUSION

For the foregoing reasons, the Second Remand Results are supported by substantial evidence and comply with the court's order in Jiaxing I, and, therefore, are sustained. Judgment will enter accordingly.

                                              /s/ Claire R. Kelly
                                            Claire R. Kelly, Judge

Dated:      July 22, 2020
              New York, New York